## UNITED STATES v. REID.

Civ. No. 2220.

United States District Court
E. D. Arkansas. W. D.

April 4, 1952.

---

1.  46 U.S.C.A. § 367.

James T. Gooch, U. S. Atty., Harry E. McDermott, Jr., Asst. U. S. Atty., Little Rock, Ark., for plaintiff.

Wright, Harrison, Lindsey & Upton, and Edward L. Wright, all of Little Rock, Ark., for defendant.

LEMLEY, District Judge.

This cause, which has been transferred to this court from the Western District of

Tennessee pursuant to 28 U.S.C.A. § 1404 (a), is before the Court upon the defendant's motion to dismiss. Said motion has been submitted upon the record in the case, the record in a similar case instituted by the Government against the defendant in this court which was dismissed without prejudice, and written briefs. While we do not believe that the action should be dismissed, we are of the opinion that it was improperly transferred to this court and that it must be remanded to the court from whence it came.

In order to understand the questions presented by the pending motion, a review of the history of this litigation is desirable:

This is an action brought by the Government against the defendant, H. E. Reid, under 49 U.S.C.A. § 621, to recover a civil penalty for an alleged violation of one of the safety regulations of the Civil Aeronautics Board, which violation is alleged to have taken place at Little Rock, Arkansas, in this District on October 3, 1949. Defendant is a pilot employed by the Chicago and Southern Airlines, Inc., and is a citizen of Tennessee, residing at Memphis.

On January 2, 1951 the Government filed an original action in this court against the defendant based upon the above-mentioned alleged violation of a safety regulation; summons was issued, and purported service was made upon the defendant on January 19, 1951 by delivering copies of the summons and complaint upon his wife at his home address in Memphis. On March 29, 1951, defendant appeared specially and moved to quash the service on the ground that it was made beyond the territorial limits of this court and outside the State of Arkansas. This motion was confessed by the Government, and, on April 4, 1951, we entered an order quashing the service. Subsequently the Government moved to dismiss the case without prejudice on the ground that no service had been obtained on the defendant; on May 1, 1951, we granted said motion, and the case was so dismissed.

On September 20, 1951, the Government filed the instant suit in the United States District Court for the Western District of Tennessee, the complaint stating the same claim for relief as was set forth in the complaint originally filed here. Service was obtained upon the defendant in Tennessee by serving his wife with copies of the summons and complaint at the defendant's home in Memphis. On October 23, 1951, defendant appeared specially in this latter action and moved to dismiss for improper venue, contending that the action was local in its nature and could only be maintained in the Eastern District of Arkansas where the alleged violation occurred. This motion was overruled on December 4, 1951, and the defendant thereafter answered. On December 18, 1951, the Government filed a motion to transfer the case to this District for trial, which motion was sustained by the Court in Tennessee over the objection of the defendant, and the case was transferred here.

In the motion to dismiss pending before us the defendant asserts: "(a) That this court does not have jurisdiction over the person of the defendant because service of summons was had upon him in Memphis, Tennessee, which is outside the territorial limits of this court and the State of Arkansas; and (b) That this lack of jurisdiction over the person of the defendant has been previously adjudicated by order of this court entered April 4, 1951, and the issue thereto is res judicata." In defendant's memorandum brief in support of his motion it is said: "* * * The order removing the cause back to this court is ineffective to confer jurisdiction vicariously where it could not be conferred originally. Stated another way, the order seeks to accomplish by indirection that which could not be accomplished directly and which has already been adjudicated in favor of the defendant. * * * We urge that the order of this Court entered April 4, 1951, is res judicata and that the government cannot by indirection accomplish that which it failed to do directly." In said brief, defendant cites Ripperger v. A. C. Allyn & Company, Inc., D.C.N.Y., 37 F.Supp. 373, affirmed, 2 Cir., 113 F.2d 332; and he likewise cites and quotes from Shapiro v. Bonanza Hotel Company, Inc., 9 Cir., 185 F.2d 777.

The Government contends, on the other hand, that the case should not be dismissed, and, further, that the order of transfer was proper and that the case should be tried here. Alternatively, it argues that if we should hold that the transfer was improper, the case should be remanded to the Western District of Tennessee.

■■■ We agree with the defendant that this court has no jurisdiction over his person, but we do not think that our lack of such jurisdiction stems from any defect in service of process upon him; nor do we think that the doctrine of res judicata is applicable here. While the claim or cause of action alleged in the complaint filed in Tennessee is the identical claim set up in the original proceeding filed in this district, the instant case is a different lawsuit from the original one, and the service upon which the Government now relies is a different service from that obtained in the original suit. As stated, the present action was commenced in the Western District of Tennessee, and service was effected within the territorial limits of the Court for said District. In our opinion said service was valid under Rule 4(d)(1) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and vested the federal court in Tennessee with jurisdiction of the person of the defendant; if the case was properly transferred to this District we likewise have jurisdiction over him. With respect to res judicata it is to be pointed out that our order of April 4, 1951 merely quashed the original service on the defendant, which was admittedly invalid; we passed on nothing except the validity of that particular service, and, as indicated, the Government is now relying upon an entirely different service; our holding that the original service was invalid is in no sense res judicata of the validity of the present service or of the jurisdiction of this Court in the present proceeding. The facts in Ripperger v. A. C. Allyn & Company, Inc., supra, were materially different from the facts in the instant case, and the decisions in that case are not pertinent here.

This brings us to a consideration of what is, to our mind, the real question in the case, and that is whether or not the federal court in Tennessee properly transferred the action to this court for trial under the provisions of 28 U.S.C.A. § 1404(a), which provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Since the power of a federal court to transfer a case to another district is entirely statutory, U. S. v. Eleven Cases, More or Less, of Ido-Pheno-Chon, D.C.Or., 94 F.Supp. 925, 926–927, and since Section 1404(a) only permits a transfer to a district where the suit "might have been brought" originally, it is obvious that the meaning of the quoted phrase is of controlling importance. If this district is one in which this action might have been brought originally within the meaning of said section, then the transfer was proper; on the other hand if this suit could not have been brought here originally, then the Tennessee court had no power to transfer it here, and, as will be hereinafter pointed out, we have no jurisdiction over the defendant's person which would entitle us to try the case.

If the phrase "any other district * * * where it might have been brought", simply means a district in which venue could be properly laid and an action "commenced" within the meaning of Rule 3 of the Federal Rules of Civil Procedure, which provides that an action is "commenced" by the filing of a complaint with the court, then the Court in Tennessee clearly had power to transfer the cause to us since venue in this district is present, and the complaint could be filed here; as a matter of fact, this was done in the original proceeding instituted by the Government, but the latter was unable to obtain service upon the defendant. On the other hand, if the phrase refers to a district wherein the defendant is actually amenable to process so that the court in that district can obtain jurisdiction of his person, then this district is not one in which the action might have been brought because the defendant, a citizen of Tennes-

see, is not amenable to the process of this court.[1]

In two district court cases, decided in 1950, the view was taken that the word "brought", as used in Section 1404(a), was synonymous with "commenced", as used in Rule 3, and that if venue was present in the transferee district, the fact that the defendant was not actually amenable to process therein was not material. Otto v. Hirl, D.C.Iowa, 89 F.Supp. 72; McCarley v. Foster-Milburn Co., D.C.N.Y., 89 F. Supp. 643. While this view of the meaning of the phrase in question supports the Government's contention that the instant transfer was proper, it has been rejected by the only two appellate courts which have had occasion to consider the problem; these courts have held that "brought" as used in 1404(a) is not synonymous with "commenced", as used in Rule 3, and that the phrase, "any other district * * * where it might have been brought" refers to and means a district where the defendant is actually amenable to process. Foster-Milburn Co. v. Knight, 2 Cir., 181 F.2d 949; and Shapiro v. Bonanza Hotel Company, Inc., supra.

Foster-Milburn Co. v. Knight, supra, was a mandamus proceeding growing out of McCarley v. Foster-Milburn Co., supra. The facts in that litigation were that the plaintiff, a citizen of California, sued the defendant, a New York corporation, in the United States District Court for the Western District of New York. After service was had, plaintiff moved to transfer the cause to California where the defendant could not be served with process. As indicated, the District Court took the position that the word "brought", as used in Section 1404(a), meant the same thing as "commenced", as used in Rule 3, and

that since venue in the California district was proper and the action could have been "commenced" there, the case was transferable to said district for trial. After the District Court announced its views but prior to the entry of the order of transfer, defendant applied to the Court of Appeals for a writ of mandamus to require the District Court to retain jurisdiction; the writ was granted, thus in effect reversing the decision of the District Court. In the course of the opinion, written by Judge Learned Hand, it was said:

"* * * it is true that the District Court of the Southern District (Northern Division) of California would have jurisdiction over an action brought by the plaintiff against the defendants, provided he served them with process within that state, or perhaps, that district. Hence, the plaintiff argues, since he could have 'brought' the action in California, § 1404(a) authorized its transfer thither. That would be true, if that section regards the mere filing of a complaint as a bringing of the action; but it is not true, if it presupposes that the defendant can be served. We do not forget that an action is 'commenced' when the complaint is filed; and it would follow, if it is 'brought' whenever it is 'commenced,' that the plaintiff is right. The inference is, however, unwarranted that Rule 3 meant to assimilate the filing of a complaint to the service of a summons. Apparently its primary object was to fix a limit upon the period of limitation; and that has never required the service of process, * * *. We need not say that that is the only office of Rule 3, but we are satisfied that at least it does not make the filing of a complaint

---

1. Title 28 U.S.C.A. § 1395(a) provides that: "A civil proceeding for the recovery of a pecuniary fine, penalty or forfeiture may be prosecuted in the district where it accrues or the defendant is found." Title 49 U.S.C.A. § 623(b) provides, insofar as is pertinent here, that any civil penalty imposed under the Civil Aeronautics Act may be collected "by proceedings in personam against the person subject to the penalty". It appears

from these two statutes that the instant proceedings are in personam and transitory; no statutory provision has been found which exempts actions of this kind from the territorial limitations on service of process found in Rule 4(f) of the Federal Rules of Civil Procedure; hence, the Government would not be able to serve the defendant in Tennessee if this action were commenced in this District.

the equivalent of 'bringing an action' under § 1404(a).

"It is horn book law that transitory actions must begin with personal service upon the defendant and that, when they do not, the judgment is a nullity. It is of course true that Congress might make the process of a district court run throughout the Union, as indeed it has done in suits by the United States under the Anti-Trust Acts [15 U.S.C.A. § 25]. But, unless otherwise specifically provided, the initial process in a transitory action has always been limited territorially; and Rule 4(f) now confines it to the boundaries of the state in which the action is pending. If, however, the plaintiff be right, § 1404 (a) has made it possible in 'diversity' cases for a plaintiff to dispense with service upon the defendant in the district where the case is to be tried; for by serving him in an action in the defendant's own district, the plaintiff may fetch him 2,000 to 3,000 miles away for trial in a district where he does not live and where he has never set foot. Considering that, this is contrary to the substantially uniform practice of Congress, and we ought to demand a plain expression of intent to so revolutionary a change. Not only is there no such expression, but analysis of the results of such an interpretation make it to the last degree improbable that this could have been the purpose.

\*　\*　\*　\*　\*　\*

"While there is as yet no controlling authority upon the point, what there is accords with our conclusion. The revisors say that § 1404(a) 'was drafted in accordance with the doctrine of forum non conveniens,' and that doctrine always 'presupposes at least two forums in which the defendant is amenable to process.' The same conclusion was expressed obiter in Christopher v. American News Co. [7 Cir., 176 F.2d 11], and Judge Rodney so decided in Tivoli Realty Insurance Co. v. Paramount Pictures, D.C. [Del.], 89 F.Supp. 278." 181 F.2d 951–953.

In determining that mandamus was a proper remedy to be pursued by the defendant in the Foster-Milburn case the Court recognized that the question of the propriety of the transfer to California was jurisdictional and pointed out that if such transfer was not authorized by Section 1404(a), it would be a nullity since the federal court in California would obtain no jurisdiction of the defendant's person, and any judgment which it might render would be void. See 181 F.2d at page 951. Speaking of this phase of the decision, the Court of Appeals for the Ninth Circuit in Gulf Research & Development Corporation v. Harrison, 185 F.2d 457, said that the error of the District Court for the Western District of New York which was under consideration in the Foster-Milburn case was "not merely potentially reversible error on appeal, but would render void any final judgment ultimately obtained, and may be regarded as analogous to a refusal to exercise effectively jurisdiction properly invoked." 185 F.2d at page 459, footnote 7. See also in this connection U. S. v. Eleven cases, More or Less, of Ido-Pheno-Chon, supra.

In Shapiro v. Bonanza Hotel Co., Inc., supra, the plaintiff, a citizen of California, sued the defendant, a Nevada corporation, in federal court in Nevada and thereafter moved for a transfer to his own district in California where defendant was not amenable to process. The District Court refused to order the transfer, and plaintiff appealed. The Court of Appeals held that the refusal of the District Court to order the transfer was an interlocutory order and not appealable, but it treated the appeal as a petition for a writ of mandamus and considered the question on the merits; it was held that the District Court did not err in refusing to order the transfer, and in this connection it was said: "Prior to the adoption of Sec. 1404(a) the Supreme Court significantly stated that the doctrine of forum non conveniens 'presupposes at least two forums in which the defendant is amenable to process'. We are persuaded that Congress did not intend, by the use of the one word 'brought', to change this rule. We adhere to the view that use of the word

'brought' presupposes jurisdiction over the defendant which is to be obtained only by and through conformance with the requirements of Rule 4(f)." 185 F.2d at page 780. The Court cited and quoted at length from the Foster-Milburn case and said: "We agree with the * * * interpretation placed upon Section 1404(a) by the Second Circuit." Ibid. 185 F.2d at page 781.

The two cases just referred to have been followed in Kostamo v. Brorby, D.C. Neb., 95 F.Supp. 806, 807, and Herzog v. Central Steel Tube Co., D.C.Iowa, 98 F. Supp. 607; in the case last mentioned, the Court referred to the decisions in Otto v. Hirl and McCarley v. Foster-Milburn Co., both supra, the former of which was an Iowa case; it was said: "Counsel for the plaintiff have stated that they rely on the opinion of our predecessor in Otto v. Hirl * * * and on McCarley v. Foster-Milburn Co. * * *. Both are carefully written opinions. Neither writer had the benefit of the views of Judge Learned Hand later expressed in Foster-Milburn Co. v. Knight, * * * wherein he disapproves of the McCarley opinion. We accept Judge Hand's conclusion and view * *." 98 F.Supp. at page 608.

In Burns v. Chubb, D.C.Pa., 99 F.Supp. 581, 582, the Court had occasion to determine when an action was "brought" in the transferor district within the meaning of Section 1404(a); while that case does not resemble the instant one from a factual standpoint or with respect to the legal question involved, the following language is pertinent: " * * * In our view a 'civil action' was 'brought' within the meaning of Section 1404(a) not when a complaint was filed with the Court, but when the Court acquired jurisdiction over the person and the subject matter."

■ We are in accord with the decisions in Foster-Milburn Co. v. Knight and Shapiro v. Bonanza Hotel Company, Inc., both supra, and with the district court cases following them, and we conclude that in view of the fact that defendant is not amenable to service in this state, transfer to this district was not authorized by the statute. This being true, we have no jurisdiction over the defendant and no right to proceed further. Foster-Milburn Co. v. Knight, supra; U. S. v. Eleven Cases, More or Less, of Ido-Pheno-Chon, supra; see also Wilson v. Kansas City Southern R. Co., D.C.Mo., 101 F.Supp. 56.

■ The Government urges that we should not disturb the order of transfer because it is the "law of the case" and also because of the doctrine of comity. Of course, ordinarily one court will not review an action taken by another court of equal and co-ordinate jurisdiction; but the question before us is not one of comity, nor does it relate to any mere abuse of discretion on the part of the transferring court in ordering the transfer; it is, in our opinion, jurisdictional and goes to the very power of this Court to proceed to judgment. Under such circumstances the general rule above mentioned has no application; we are not bound by the order of the transferor court, and we are required to remand the case. See Fettig Canning Co. v. Steckler, 7 Cir., 188 F.2d 715; Wilson v. Kansas City Southern R. Co., supra; U. S. v. 23 Gross Jars, More or Less, of Enca Cream, D.C.Ohio, 86 F.Supp. 824.

■ While we are convinced that this case should be remanded, we are of the opinion that in the interest of orderly procedure there should be a consideration of the question by an appellate court. For this reason entry of an order will be deferred for 60 days to enable the Government, if it so desires, to apply to the Court of Appeals for the Eighth Circuit for a writ of mandamus to require us to retain jurisdiction. The propriety of such a course is indicated by McCarley v. Foster-Milburn Co., supra, and Fettig Canning Co. v. Steckler, supra. If no such application is made within the time limited, an order of remand will be entered. In the meantime this memorandum will be filed as part of the record in the case.